UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KEITH PLAISANCE | * | CIVIL ACTION NO. |
| | * | |
| **Plaintiff** | * | |
| | * | |
| VERSUS | * | JUDGE: |
| | * | |
| AVID LIFE MEDIA, INC. a corporation, | * | |
| and AVID DATING LIFE, INC. d/b/a | * | |
| ASHLEY MADISON | * | MAG JUDGE: |
| | * | |
| **Defendants** | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT FOR DAMAGES

Plaintiff, **KEITH PLAISANCE**, by and through undersigned counsel, brings this action

against Defendants, **AVID LIFE MEDIA, INC. a corporation, and AVID DATING LIFE,**

**INC. d/b/a ASHLEY MADISON** and respectfully alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this action as a result of Defendants failure to adequately protect

AshleyMadison.com members' private personal and financial information from being

disseminated to the public. Defendants allowed a group of hackers, known as "The Impact

Team," to access, download, and make public Plaintiff's personal and financial information.

Such personal information included, but is not limited to, Plaintiff's name, address, credit or

debit card information, the card's expiration date, and/or the card's security code, as well as how

much Plaintiff spent purchasing services at AshleyMadison.com.

2.      Plaintiff asserts claims against the Defendants for breach of federal statute, state

statute, breach of contract, breach of implied contract, fraud, negligence, and misrepresentation.

Plaintiff seeks to recover damages, including actual, statutory, punitive damages, and equitable relief, including injunctive relief to prevent the recurrence of this security breach and resulting injury, restitution, disgorgement and reasonable costs and attorneys' fees.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated and have their principal places of business in Toronto, Canada.

## PARTIES

4.      Plaintiff **KEITH PLAISANCE** is an adult male domiciled in Jefferson Parish, Louisiana and is a citizen of Louisiana. Keith Plaisance provided both personal and financial information to Defendants in order to access Defendants' services. Keith Plaisance's information was compromised as a result of Defendants' lack of adequate security measures. As a result of this compromise, Plaintiff has suffered losses and damages in an amount not yet quantifiable.

5.      Upon information and belief, Defendants Avid Life Media, Inc. and Avid Dating Life, Inc. are organized under Canadian law and their principal places of business are located in Toronto, Canada.

## FACTUAL BACKGROUND

6.      Ashley Madison is a Canadian-based online dating service and social networking service marketed to people who are married or in a committed relationship. Its slogan is "Life is short. Have an affair." Its website, AshleyMadison.com, is owned by Avid Dating Life, Inc., a subsidiary of Avid Life Media, Inc., both of which are privately held

Canadian corporations.

7.      Defendants market AshleyMadison.com to consumers in the United States as well as fifty-two (52) other countries. In total, the website has approximately thirty-nine (39) million customers. It is rated the twentieth most popular adult website in the United States, and is marketed through television, radio, billboard, and internet advertisements.

8.      The website's business model is based upon credits, which users purchase in order to facilitate a contact with another member. Anyone is permitted to create a "free" account at AshleyMadison.com, even someone who desired to create an account using a friend or acquaintance's email account. AshleyMadison.com does not verify emails to ensure that the person applying for an account was the actual owner of the offered email address.

9.      On or about July 15, 2016, and at other times prior to this date, Defendants' customer databases were compromised, which resulted in personal information of the Plaintiff and Class Members being used, or at risk of being used, in fraudulent transactions around the world, as well as the disclosure to the public that each Class Member had an account with Ashley Madison.

10.      Upon information and belief, the personal information of approximately 39 million subscribers was taken from Defendants, and Defendants' failure to protect the Plaintiff and Class Members credit/debit card information affected hundreds of thousands, if not millions of customers worldwide.

11.      On or about July 19, 2015, The Impact Team made public that it possessed personal and financial information for AshleyMadison.com subscribers. The Impact Team team gave AshleyMadison.com an ultimatum – shut down the site or risk the release of all of your customers' personal and financial information.

12.     AshleyMadison.com, who prides itself as a 100% discrete service and guarantees that member information is protected, did not heed The Impact Team's ultimatum, and on August 20, 2015, millions of current and former account holders at AshleyMadison.com had their personal and financial information released to the public.

13.     Published reports indicate that the personal and financial information of millions of Defendants' current and former customers from around the United States has been compromised as a result of this data/security breach. The ongoing aftermath reveals that AshleyMadison.com failed to follow common security protocols and lacked any meaningful policies and procedures related to the protection of customer data.

14.     Although Ashley Madison's lapse in any meaningful security protocols was/is a grave injustice and has caused damage to millions worldwide, it gets worse. AshleyMadison.com was not like other websites that allowed a user to delete one's account if he were dissatisfied or no longer used the account. Rather, AshleyMadison.com only allowed a member to either make his/her account invisible to the public or pay $19 dollars to have his/her account and all correlating information deleted forever. The Impact Team's recent revelations have revealed that this $19 service was a complete scam.

15.     Moreover, upon learning of the data/security breach, Defendants failed to notify the Plaintiff and/or the putative Classes within a reasonable time and failed to inform the Plaintiff and Classes of the nature and extent of the breach. As a result, Defendants deprived the Class Members of the ability to protect themselves and mitigate their damages to prevent further personal and financial injuries.

16.     The disclosure of Plaintiff's and the putative Class Members' private personal information, not to mention the fact that an AshleyMadison.com account existed, is likely to and

has caused the Plaintiff and Class Members extreme emotional distress/embarrassment, disruption of/interference with Plaintiff's personal and social life, and/or economic loss.

17.    The disclosure of Plaintiff's and the putative Class Members' private financial information subjects the Classes to a heightened risk of fraud, fraudulent charges, and/or identity theft. Both the personal and financial information is at serious and ongoing risk of misuse because anyone with a computer can obtain this private information because of Defendants' failure to protect their customers' data.

18.    If a member is unsatisfied or no longer interested in having an account with AshleyMadison.com, they are permitted to hide their account at no cost. However, if a member wants assurance that their account had been permanently erased, he/she must pay a $19 fee (referred to herein as "Paid-Delete"). The Paid-Delete option claimed to remove user profiles, all messages sent and received, site usage history, personally identifiable information and photos from the site. Unfortunately, the recent disclosures provided by The Impact Team reveal that the Paid Delete feature was a fraud, and all data existed and was recoverable.

## Account Creation

19.    To create an account on AshleyMadison.com, users are required to select a username and password, personalize a greeting, indicate location (by country), zip code, date of birth, type of affair sought – the options provided are short term, long term, cyber affair/erotic chat, or other – height, weight, body type, ethnicity and email.

20.    Below the box where users are asked to enter their "email,' the website promises: "This email will never be shown or shared."

21.    The website also asks each user to upload a "discrete photo" and offers options of either placing a mask over the user's eyes on the photo or blurring the photo.

22.     In the "Manage Profile" section, users may enter information relating to "My Intimate Desires" "My Perfect Match" and "My Personal Interests," among other information.

23.     Upon information and belief, Defendants store the users' personal information they collect in an unencrypted format at the database level. Despite these security threats that may have even been internally discovered by Defendants' internal officers and/or directors, Defendants published on the internet a statement calling itself "the last truly secure space on the Internet."

### Allegations Specific to Plaintiff

24.     On or about 2007, Plaintiff created an account with AshleyMadison.com. As part of the process of creating his account, Plaintiff created a username and password and entered his personal information into the website's system. Plaintiff subsequently purchased credits with his credit card and utilized Ashley Madison's services.

25.     On August 21, 2015, Plaintiff became aware that his information had been released to the public and had friends, customers, and neighbors apprise him of their awareness that he had an account with AshleyMadison.com. Plaintiff also received countless embarrassing messages from friends and family on Facebook and through other social media forums.

26.     Plaintiff was not in a relationship at the time he initially accessed the site, however, he was married to his now ex-wife at the time his private information was released to the public, and he has suffered much embarrassment and emotional distress as a result of Ashley Madison's failure to protect Plaintiff's private information. As a result of Defendants' breach of duty, Plaintiff's wife filed for divorce on March 10, 2016.

## CAUSES OF ACTION

### COUNT ONE
### (Negligence)

27.     Plaintiff repeats and realleges the preceding paragraphs as if fully stated herein.

28.     Upon receiving Plaintiff's personal private information and financial information, Defendant had (and continues to have) a duty to exercise reasonable care in safeguarding and protecting member information from being accessed and/or stolen.

29.     Defendants also had a duty to timely disclose to Plaintiff that a data/security breach had occurred and that his personal information, as well as his financial information had been compromised, or was reasonably believed to be compromised.

30.     Defendants also had a duty to put into place internal policies and procedures designed to detect and prevent the access to and/or dissemination of Plaintiff's personal information.

31.     Defendants, by and through the above negligent acts and/or omissions, breached its duty to Plaintiff by failing to exercise reasonable care in protecting and safeguarding personal information in Defendants' possession, custody, and control.

32.     Defendants, by and through the above negligent acts and/or omissions, further breached its duty to Plaintiff by failing to put into place meaningful internal policies and procedures designed to detect and prevent the unauthorized dissemination of Plaintiff's personal information.

33.     Defendants, by and through the above negligent acts and/or omissions, breached its duty to timely disclose the fact that Plaintiff's private information had been or was reasonably believed to have been compromised.

33.     Plaintiff's personal information was compromised and/or stolen as a direct and proximate result of Defendant's breach of its duties as set forth herein.

34.     The Plaintiff have suffered actual damages including, but not limited to, having his personal information disseminated to the public, incurring time and expenses in cancelling their debit/credit cards, activating new credit cards and re-establishing automatic payment authorizations from his new cards, and other economic and non-economic damages, including irrecoverable losses due to unauthorized charges on his credit/debit cards.

## COUNT TWO
### (Violation of the Federal Stored Communications Act, 18 U.S.C. §2702)

35.     The Stored Communications Act ("SCA") provides consumers with redress if a company mishandles their electronically stored information ("ESI"). The SCA was designed, in relevant part, "to protect individuals' privacy interests in personal and proprietary information." S. Rep. No. 99-541, at 3 (1986).

36.     Section 2702(a)(1) of the SCA provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

37.     The SCA defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." *Id.* at §2510(15).

38.     Defendants provide an "electronic communication service to the public" within the meaning of the SCA because it provides consumers at large with credit and debit card payment processing capability that enables them to send or receive wire or electronic communications

concerning their private financial information to transaction managers, card companies, and/or banks.

39. By failing to take commercially reasonable steps to safeguard private financial information, even after Defendants became aware that customers' personal information had been compromised, Defendants knowingly divulged customers' financial information that was communicated to financial institutions solely for customers' payment verification purposes, while in electronic storage in Defendants' payment system.

40. Section 2702(a)(2)(A) of the SCA provides that "a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the content of any communication which is carried or maintained on that service on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission form), a subscriber or customer of such service." 18 U.S.C. § 2702(a)(2)(A).

41. The SCA defines "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communication system." 18 U.S.C. § 2711(2).

42. An "electronic communications systems" is defined by the SCA as "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." 18 U.S.C. §2510(4).

43. Defendant provides remote computing services to the public by virtue of its computer processing services for consumer credit and debit card payments, which are used by customers and carried out by means of an electronic communications system, namely the use of

wire, electromagnetic, photooptical or photoelectric facilities for the transmission of wire or electronic communications received from, and on behalf of, the customer concerning the customer's private financial information.

44.   By failing to take commercially reasonable steps to safeguard private financial information, Defendant knowingly divulged customers' financial information that was carried and maintained on Defendants' remote computing service solely for the customers' payment verification purposes.

45.   As a result of Defendants' conduct described herein and its violations of Section 2702(a)(1) and (2)(A), Plaintiff has suffered injuries, including lost money and the costs associated with the need for persistent credit monitoring to protect against additional identity theft. Plaintiff seeks an order awarding the maximum statutory damages available under 18 U.S.C.§ 2707 in addition to the cost for three (3) years of credit monitoring services.

## COUNT THREE
### (Violation of Louisiana's Unfair or Deceptive Trade Practices Act)

46.   Plaintiff adopts and realleges all preceding paragraphs as if fully incorporated herein.

47.   Defendants violated the Louisiana Unfair or Deceptive Trade Practices Act, LA R.S. 51:1405, et seq., and the substantially similar statutes of other states in which it conducts business by failing to properly implement adequate, commercially reasonable security measures to protect customers' private financial information.

48.   Defendants fraudulent and deceptive omissions and misrepresentations as to the security measures taken to protect Members' personal financial information was intended to deceive and induce the Plaintiff to rely on Defendants' misrepresentations that the his personal

and financial information was secure.

49.     Moreover, Defendants failure to delete member information after members paid $19 to ensure deletion is unconscionable.

50.     Defendants' unlawful misrepresentations and omissions occurred in the course of conduct involving trade and commerce.

51.     Defendants' unlawful misrepresentations and omissions were material because Plaintiff would not have risked compromising their private financial information by using their debit or credit cards for Defendants' services. Plaintiff considers the omitted and misrepresented material facts  important in making his purchasing decision.

52.     Defendants' unlawful misrepresentations and omissions damaged Plaintiff because Plaintiff would not have chosen to expose his private financial information to a security breach and subsequent exploitation by  Defendants.

## COUNT FOUR
### (Breach of Implied Contract)

53.     Plaintiff repeats and realleges the preceding paragraphs as if fully stated herein.

54.     When Plaintiff provided his private personal and financial  information to Defendants, they entered into implied contracts by which Defendants agreed to  protect his personal and financial information and to timely notify him in the event of a data  and/or security breach.

55.     An implicit part of the agreement regarding Defendants' use of the personal and financial information was that Defendants would safeguard the information using reasonable or industry-standard means and would timely notify Plaintiff in the event of a data breach.

56.     Based upon this implicit understanding, Plaintiff provided Defendants with his personal and financial information

57.    Plaintiff would not have provided him personal and financial information to the Defendants had he known that Defendants did not have proper safeguards in place as promised or would not timely provide notice of a data/security breach.

58.    The Plaintiff fully performed his obligations under the implied contracts with the Defendants.

59.    Defendants breached the implied contracts by failing to safeguard the Plaintiff's personal and financial information and by failing to provide him with timely and accurate notice when the personal and financial information was compromised by the data/security breach.

60.    The losses and damages that Plaintiff has sustained were the direct and proximate result of Defendants' breaches of its implied contracts with them.

## COUNT FIVE
### (Breach of Contract)

61.    Plaintiff adopts and realleges all preceding paragraphs as if fully incorporated herein.

62.    In exchange for payment of a fee, Defendants agreed to delete or erase a customer's personal and financial information from its systems/records.

63.    Plaintiff paid the fee to have his information deleted or erased from Defendants' systems/records.

64.    Defendant breached the contract with Plaintiff by not deleting or erasing his personal information as agreed.

65.    Plaintiff had his personal and financial information stolen as a result of the data/security breach.

66.    Plaintiff has been damaged as a direct and proximate result of Defendants' breach

of contract.

## COUNT SIX
### (Fraud and Misrepresentation)

67.     Plaintiff adopts and realleges all preceding paragraphs as if fully incorporated herein.

68.     The Defendants represented to Plaintiff that if he paid $19, that AshleyMadison.com would delete all account data and correlating personal and financial information. Such representations were false at the time they were made. The Defendants knew said representations were false and the representations were made in order to induce the Plaintiff to pay monies to erase his account.

69.     As a result of the fraud and misrepresentation of the Defendants, the Plaintiff has lost the benefit of the bargain and has been further damaged by recent data/security breach.

70.     WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants in an amount of damages to be determined by a jury at a trial of this cause.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial as to all claims and issues triable of  right by a jury.

## PRAYER FOR REILIEF

WHEREFORE, Plaintiff and the Members of the proposed Classes pray that this Court do  the following:

A. Award Plaintiff compensatory damages in an amount to  be determined by the tier of fact;

B. Award Plaintiff statutory interest and penalties;

C. Award Plaintiff appropriate injunctive and/or declaratory relief;

D.  Award Plaintiff his costs, prejudgment interest, and attorneys fees;   and

E.  Any further relief the Court deems just.

Respectfully submitted:

*/s/ Lawrence J. Centola, III*
SCOTT R. BICKFORD, T. A. (#1165)
srb@mbfirm.com
LAWRENCE J. CENTOLA, III (#27402)
ljc@mbfirm.com
CHRISTOPHER H. CARBINE (#36326)
chc@mbfirm.com
**MARTZELL, BICKFORD & CENTOLA**
338 Lafayette Street
New Orleans, Louisiana  70130
Telephone:     (504) 581-9065
Facsimile:     (504) 581-7635

**COUNSEL FOR PLAINTIFF**

Defendants' address:

Avid Life Media, Inc.  Avid
Dating Life, Inc.
20 Eglinton Avenue West
Ste. 1200, Box 2055
Toronto, On M4R 1K8